220 P.3d 489 (2009)
In the Matter of the Personal Restraint Petition of Corey Scott BEITO, Petitioner.
No. 77973-2.
Supreme Court of Washington, En Banc.
Argued May 26, 2009.
Decided November 12, 2009.
*490 Jeffrey Erwin Ellis, Ellis Holmes & Witchley PLLC, Seattle, WA, for Petitioner.
Ann Marie Summers, James Morrissey Whisman, King County Prosecutor's Office, Seattle, WA, for Respondent.
C. JOHNSON, J.
¶ 1 This case involves a challenge to an exceptional sentence imposed by the trial judge following a plea of guilty to first degree murder. The trial court found Corey Scott Beito's rape of the victim, Jessica Seim (a minor child), was the motive for and closely connected to her murder. The trial court found this fact in addition to the facts contained in the statement of probable cause, which Beito agreed could be used to determine the factual basis for his plea. Based on this additional fact-finding, the trial court imposed an exceptional sentence. After two remands to the trial court, the Court of Appeals in an unpublished opinion affirmed Beito's exceptional sentence. State v. Beito, noted at 119 Wash.App. 1056, 2003 WL 22996116 (2003). Beito filed this personal restraint petition arguing the trial court had committed a Blakely error, which the Court of Appeals dismissed. Under our cases, the fact-finding by the trial court in this matter was in error, as it violated Beito's Sixth Amendment rights. Where, as here, the defendant has not stipulated to facts that comprise an aggravating factor or to judicial factfinding, the trial court must impanel a jury to find beyond a reasonable doubt that the aggravating factors exist. Although Beito did stipulate to both the murder and the rape, he did not stipulate that facts existed to support an exceptional sentence, that the rape was motive for and closely connected to the murder, or that the trial court could engage in judicial fact-finding. Under the sentencing provisions in effect at the time of Beito's crime, it was procedurally impossible for the trial court to impanel a jury to reach a constitutionally acceptable finding of aggravating factors to support Beito's exceptional sentence. Neither the 2005 nor the 2007 amendments to the applicable sentencing provisions cured this problem, and harmless error analysis does not apply. Because the Blakely error in this case cannot be cured, we reverse and remand for resentencing within the standard range.

FACTS
¶ 2 In 1998, Corey Scott Beito raped and murdered Jessica Seim. Beito was charged by information with aggravated murder in the first degree. After plea negotiations, the State amended the information to charge murder in the first degree. On October 8, 2000, Beito pleaded guilty to one count of murder in the first degree. Beito also admitted to rape of a child: Jessica was 14 and Beito was 27 at the time of the rape and murder.
¶ 3 In the statement of defendant on plea of guilty, Beito acknowledged the State would be seeking an exceptional sentence. In accord with former RCW 9.94A.370 (2000),[1] the parties stipulated that the trial court, in order to find a basis for Beito's plea and sentencing, could consider as real and material facts the information set out in the statement of defendant on plea of guilty and the certification for determination of probable cause.
¶ 4 The standard range for Beito's offense is 291-388 months of confinement. The State recommended an exceptional sentence of 504 months of confinement. Beito did not stipulate to an exceptional sentence; rather, he acknowledged only that the State would be seeking an exceptional sentence. In fact, Beito requested a sentence in the middle of the standard range. Verbatim Report of Proceedings, First Sentencing Hr'g (Mar. 3, *491 2000) at 24. In the statement of defendant on plea of guilty, subsection (g) provides "[t]he judge does not have to follow anyone's recommendation as to sentence.... If the judge goes outside the standard range, either [Beito] or the State can appeal that sentence."
¶ 5 As a basis for imposing an exceptional sentence, the State argued and the trial court agreed that rape was an aggravating factor that supported imposing an exceptional sentence. In determining whether to impose the exceptional sentence of 504 months confinement, the trial court relied on its finding that "[t]he [r]ape was closely connected to the murder." Court's Written Findings of Fact (FF) and Conclusions of Law in Supp. of Exceptional Sentence (Apr. 2, 2002) at 2 (FF 4(B)). In FF 8, the court found that "[a] valid inference from the evidence is that the rape was a motive for, and factually connected to, the murder...." Beito never stipulated to these facts; rather, the trial court found these facts in addition to the real facts for which Beito did stipulate. These facts were never put to a jury to be found beyond a reasonable doubt.
¶ 6 In its conclusions of law, the trial court determined that substantial and compelling reasons existed to impose an exceptional sentence based on former RCW 9.94A.390(2) (2000)[2] and former RCW 9.94A.370(2), a preponderance of evidence, and the fact that Beito stipulated to rape of a child. The trial court based this conclusion on its finding that the rape and murder were sufficiently connected. The trial court also concluded as a matter of law that insufficient evidence existed to impose an exceptional sentence on the basis of victim vulnerability or deliberate cruelty, per former RCW 9.94A.390(2)(b)(a). Ultimately, the trial court imposed an exceptional sentence of 504 months of confinement.
¶ 7 Beito appealed the exceptional sentence. The Court of Appeals remanded Beito's sentence twice, and both times the trial court imposed the same exceptional sentence. The Court of Appeals affirmed the exceptional sentence following the second remand, and we denied review. Beito, noted at 119 Wash. App. 1056, 2003 WL 22996116, review denied, 152 Wash.2d 1003, 101 P.3d 865 (2004).
¶ 8 In April 2005, Beito filed a personal restraint petition to challenge his exceptional sentence under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Blakely was issued before Beito's judgment and sentence became final. Beito asserted, among other things, that in light of Blakely, the trial court violated his Sixth Amendment right to a jury trial. The Court of Appeals dismissed the petition, partly relying on State v. Hagar, 126 Wash.App. 320, 105 P.3d 65 (2005), rev'd, 158 Wash.2d 369, 144 P.3d 298 (2006).
¶ 9 Beito, now assisted by counsel, sought discretionary review in this court. The petition was initially stayed pending our decision in Hagar. The petition was again stayed pending our decision in State v. Recuenco, 163 Wash.2d 428, 180 P.3d 1276 (2008).[3] Following these stays, Beito's personal restraint petition was granted only on the Blakely issue.

ISSUE
¶ 10 In light of Blakely, is it error for the trial court to impose an exceptional sentence based on unstipulated facts or those not proved to a jury beyond a reasonable doubt?

ANALYSIS
¶ 11 The Sixth Amendment guarantees a criminal defendant the right to a jury trial. When a court imposes an exceptional sentence predicated on an unstipulated fact not found by a jury beyond a reasonable doubt, the court violates the defendant's Sixth Amendment (Blakely) right. Hagar, 158 Wash.2d at 374, 144 P.3d 298. After Blakely, a jury must find beyond a reasonable doubt that factual bases for establishing the aggravating factor existed.
¶ 12 Where a Blakely error occurs, the defendant may challenge the imposition of an exceptional sentence pursuant to Blakely without first having to withdraw his or her *492 plea. Hagar, 158 Wash.2d at 374, 144 P.3d 298 (defendant need not challenge his or her stipulation in order to establish that a Blakely violation occurred). In Hagar, the defendant stipulated to certain facts but did not stipulate that the crimes constituted a "major economic offense." There, the trial court imposed an exceptional sentence based on a finding that Hagar committed a major economic offense. We held this sentence violated Blakely because the exceptional sentence was predicated on an unstipulated fact that was not found by a jury beyond a reasonable doubt.
¶ 13 Similarly, Beito challenges his exceptional sentence arguing that the trial court violated Blakely by imposing such a sentence. The trial court found the rape was motive for and closely connected to the murder and that such a finding supported imposing an exceptional sentence. But Beito did not stipulate to this fact or the imposition of an exceptional sentence. Although Beito did stipulate to the facts that led the trial court to this finding, it was an additional finding that was needed to connect the murder with the rape (i.e., an unstipulated fact not proved to a jury beyond a reasonable doubt), a finding which is controlled by Blakely. The State concedes the trial court violated Blakely in basing the exceptional sentence on this finding. State's Suppl. Resp. to Mot. for Discretionary Review at 5-6.
¶ 14 Having conceded the Blakely error, the State argues that, because Beito waived his right to a jury, the question before us is whether the trial court's error was harmless. But, with respect to resolving harmless error claims for crimes occurring before 2005, we have held that, where a defendant did not waive his right to a jury trial, a Blakely error could not be deemed harmless because, under the statutes existing at the time, it would have been procedurally impossible to submit the aggravating facts to a jury for determination. In re Pers. Restraint of Hall, 163 Wash.2d 346, 181 P.3d 799 (2008). The State argues Hall is distinguishable because, unlike Hall, Beito waived his right to a jury trial. But this claim may prove too much in Beito's case.
¶ 15 In Hall, the sentencing court imposed an exceptional sentence based on its own factual finding that the aggravating factors were present. The United States Supreme Court has held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, besides the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The United States Supreme Court noted in Blakely that the "`statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531. In Hall, relying on Apprendi and Blakely, we left for another day the "issue of whether harmless error analysis applies in [Hall's] circumstances because `we [were] convinced the error [in Hall's case] was not harmless beyond a reasonable doubt.'" Hall, 163 Wash.2d at 351 n. 5, 181 P.3d 799 (quoting State v. Womac, 160 Wash.2d 643, 663 n. 13, 160 P.3d 40 (2007)). Even though Hall's case, unlike Beito's, was submitted to a jury, it was the trial court and not the jury that determined whether aggravating factors existed to support imposing an exceptional sentence. This additional finding by the trial court violated Hall's Apprendi/Blakely Sixth Amendment right to a jury trial. Further, Hall did not present, and we did not decide, the procedural impossibility (at the time) to obtain a jury verdict on aggravating factors where the defendant expressly waives his or her Apprendi/Blakely Sixth Amendment right, either by stipulating to the relevant facts or by consent to judicial fact-finding. But this question left open in Hall is not presented in Beito's case.
¶ 16 In Suleiman, we held that a defendant's stipulation to facts that support imposing an exceptional sentence would survive Blakely requirements only where the defendant stipulated specifically to the aggravating factor at issue and agreed the record supported the factor. State v. Suleiman, 158 Wash.2d 280, 292, 143 P.3d 795 (2006). Put otherwise, it is not enough to stipulate to facts from which the trial court could find additional facts, the existence of which would *493 support finding the aggravating factor was present and provides support for imposing an exceptional sentence.
¶ 17 Here, like in Hall, the trial court engaged in fact-finding to support imposing Beito's exceptional sentence. Under Suleiman, because Beito did not stipulate to the facts relied on by the trial court to support the exceptional sentence, Beito did not waive his Apprendi/Blakely Sixth Amendment right to have a jury find beyond a reasonable doubt that the aggravating factor supporting an exceptional sentence existed. Because Beito did not stipulate to such facts, the State's harmless error argument is not persuasive in light of Hall, so that issue remains an open question.
¶ 18 The State concedes that a Blakely error occurred, which recognizes that the trial court did engage in impermissible factfinding, thereby violating Beito's Apprendi/Blakely rights. Here, at most, the stipulated facts establish Beito committed rape of a child in the third degree and that he was responsible for Jessica's murder. A review of the record shows Beito did not stipulate to the exceptional sentence or the fact that the rape was motive for and closely connected to the murder. Under Apprendi, without such an admission by Beito, a jury and not the trial court should have determined whether aggravating factors that support an exceptional sentence (if any) existed. We hold that, without more, the trial court violated Beito's Apprendi/Blakely Sixth Amendment right to a jury trial. In so holding, no harmless error analysis is available. As a practical matter, if we engaged in a harmless error analysis for this issue, we would usurp the role the United States Supreme Court has reserved for the jury in determining whether aggravating factors exist to support an exceptional sentence. In other words, in light of Blakely, there is nothing in this case for which harmless error analysis applies.
¶ 19 Finally, the State argues in favor of remanding the case for the trial court to impanel a jury to determine if the aggravating factors existed in Beito's case. But the applicable statutes and our cases do not support the State's position.
¶ 20 In Hall, we determined that under the exceptional sentencing provisions applicable to Hall (at the time of sentencing), no procedure existed whereby the jury could have been asked to determine whether aggravating circumstances were present. "The exceptional sentencing provisions in effect when Hall committed his offense directed that the trial court find aggravating circumstances by a preponderance of the evidence." Hall, 163 Wash.2d at 351-52, 181 P.3d 799 (emphasis added). This legislative directive precluded requiring proof beyond a reasonable doubt to be found by a jury. As such, it follows that this directive made it procedurally impossible to obtain a constitutionally valid jury finding with respect to the existence of any aggravating factor. The applicable language at the time of Hall's case "`explicitly direct[ed] the trial court to make the necessary factual findings to support an exceptional sentence and d[id] not include any provision allowing a jury to make those determinations during trial, during a separate sentencing phase, or on remand.'" Hall, 163 Wash.2d at 352, 181 P.3d 799 (second emphasis added) (alterations in original) (internal quotation marks omitted) (quoting Womac, 160 Wash.2d at 662-63, 160 P.3d 40). The same sentencing provisions applicable at the time of Hall's crime (1996) were the provisions applicable at the time of Beito's crime (1998). Because Beito, unlike Hall, did not waive his right to a jury with respect to determining sentencing factors, the same analysis applies. That being the case, we must now determine how Beito's case should be resolved on remand and whether it is now procedurally possible to impanel a jury to consider whether an aggravating factor existed that would support imposing an exceptional sentence.
¶ 21 Since Beito's conviction, the Sentencing Reform Act of 1981(SRA) has been amended twice. In response to Blakely, the legislature first amended the SRA by adding a statute, former RCW 9.94A.537 (2005), which allows juries to decide whether aggravating factors existed, the Blakely-fix. Laws of 2005, ch. 68, § 4. But we have found this amendment does not apply to any cases decided before its 2005 enactment. State v. Pillatos, 159 Wash.2d 459, 150 P.3d 1130 *494 (2007). In Pillatos, we held trial courts did not possess inherent authority to impanel juries on remand to cure a Blakely error. As a result, under Pillatos, the 2005 amendments do not apply here (Beito pleaded guilty in 2000). Because the 2005 amendments do not apply, without more, our holding in Pillatos requires the trial court to impose a standard range sentence on remand.
¶ 22 Following Pillatos, the legislature amended the SRA, former RCW 9.94A.537 (2005), to allow trial courts to impanel juries to decide aggravating factors in cases that had been previously decided. Laws of 2007, ch. 205, § 1.
¶ 23 Beito argues that, on remand, the trial court must impose a sentence within the standard range. He asserts that the 2007 amendment, enacting the current RCW 9.94A.537(2), does not apply to his case.[4] As Beito correctly points out, although the 2007 amendment permits the trial court to impanel a jury to determine the aggravating factors (if any) that might exist, the statute is not without its own express limits. RCW 9.94A.535 authorizes the impaneled jury to consider only the exclusive list of aggravating factors identified in subsection (3) "that were relied upon by the superior court in imposing the previous sentence...." RCW 9.94A.537(2); see also RCW 9.94A.535(3) ("[T]he following circumstances are an exclusive list of factors that can support a sentence above the standard range." (emphasis added)).
¶ 24 Here, the trial court imposed Beito's exceptional sentence based on its finding that the victim's rape was motive for and closely connected to her murder. The finding of "rape closely connected to and motive for murder" is not a factor in RCW 9.94A.535(3), nor is anything of that nature listed there. Significant here is that "deliberate cruelty" and victim "vulnerability" are aggravating factors listed in RCW 9.94A.535(3)(a) and (b), respectively. But the trial court specifically rejected deliberate cruelty and victim vulnerability as aggravating factors. Because the factor relied on by the trial court is not found in the statute's exclusive list, we hold that the 2007 amendments are not applicable in Beito's case.

CONCLUSION
¶ 25 We reverse and remand for resentencing within the standard range.
WE CONCUR: GERRY L. ALEXANDER, C.J., and SUSAN OWENS, BARBARA A. MADSEN, RICHARD B. SANDERS, DEBRA L. STEPHENS, and TOM CHAMBERS, JJ.
J.M. JOHNSON, J. (dissenting).
¶ 26 On the night of January 21, 1998, Corey Beito raped 14-year-old Jessica Seim and then strangled her to death using his hands and a belt. He subsequently stuffed her body and other evidence of his crimes into a garbage can, which he locked inside a backyard tool shed. Beito confessed to these events several days later in a taped statement made to the police. He ultimately pleaded guilty to a murder charge (thereby avoiding a jury trial) and expressly acknowledged the State would seek an exceptional sentence.
¶ 27 Nevertheless, the majority would overturn Beito's exceptional sentence because of the State's failure to submit to a jury the aggravating factor upon which the sentencing court relied in imposing the 504-month exceptional sentence. I conclude that this was not error where Beito chose to avoid a jury trial by pleading guilty to murder and stipulating to the relevant facts. If error is found, it is clearly harmless and not such error to merit overturning Beito's exceptional sentence. I dissent.
¶ 28 Although Beito was originally charged with first degree aggravated murder, the State amended the information to the lesser charge of first degree murder after plea negotiations pursuant to which Beito agreed to plead guilty. In the plea agreement for the lesser murder charge, Beito acknowledged that he understood that the State would seek an exceptional sentence. Beito also stipulated to facts establishing the elements of *495 first and second degree rape, stipulated that he committed third degree rape of a child, and acknowledged the facts upon which the sentencing court relied in imposing an exceptional sentence on three separate occasions.[1] That is, Beito either stipulated to or acknowledged the facts that allowed the sentencing court to impose an exceptional sentence of 504 months based on its finding that rape of a child closely connected to the murder of that child amounted to a substantial and compelling basis to support an exceptional sentence.
¶ 29 The majority concludes that harmless error analysis does not apply to errors such as the one that allegedly occurred in Beito's sentencing. Majority at 490. It bases this conclusion on the fact that the exceptional sentencing statute at the time of Beito's offense required the trial court, not a jury, to find aggravating factors by a preponderance of the evidence. In re Pers. Restraint of Hall, 163 Wash.2d 346, 355, 181 P.3d 799 (2008). This requirement, the majority reasons, conflicts with the Blakely/Apprendi rule that a jury, not the trial court, must find beyond a reasonable doubt any aggravating factors that justify any upward departure from standard sentencing ranges. See id. at 348 n. 1, 181 P.3d 799 (citing Blakely v. Washington, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)); id. at 351, 181 P.3d 799 (quoting Washington v. Recuenco, 548 U.S. 212, 222, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (Recuenco II)). Relying on language from this court that indicates that "it can never be harmless to sentence someone for a crime not charged, not sought at trial, and not found by a jury," State v. Recuenco, 163 Wash.2d 428, 442, 180 P.3d 1276 (2008) (Recuenco III), the majority concludes that harmless error analysis does not apply here.
¶ 30 However, it bears emphasis that Beito was not sentenced "for a crime not charged." Id. The second amended information to which Beito pleaded guilty included a charge of first degree murder. He was sentenced for that crime. As part of his plea agreement, Beito agreed that "[t]he Court may consider the certificate of probable cause as well as the terms of Appendix C to form a basis for ... my sentencing." Clerk's Papers (CP) at 79. The certificate of probable cause, in turn, included facts sufficient to establish third degree rape of a child, id. at 81-82. Appendix C includes specific acknowledgement that "the crime of Rape of a Child Third Degree was committed," id. at 87. Beito was not sentenced for a crime not charged, but rather sentenced for first degree murder, as charged, with an exceptional 504-month sentence imposed on the basis of those stipulated and acknowledged facts. Thus, the holding in Recuenco III that it is never harmless error to sentence a defendant for a crime not charged is not relevant.
¶ 31 The majority also relies on In re Pers. Restraint of Hall, 163 Wash.2d 346, 181 P.3d 799 (2008). Majority at 492. The application of the Blakely/Apprendi rule in Hall is easily distinguishable. In Hall, the defendant did not enter a guilty plea like Beito here; rather, Hall was convicted by a jury. Hall, 163 Wash.2d at 349, 181 P.3d 799. The holding in that case applies only to cases in which the defendant has not waived his right to a jury trial by stipulating to the relevant facts or consenting to judicial fact-finding. The court in Hall conceded this limitation. Id. at 352 n. 6, 181 P.3d 799 ("we do not decide ... the effect of a procedural inability to obtain a constitutionally valid jury finding when a defendant expressly waived his or her Apprendi/Blakely Sixth Amendment rights [to a jury trial]"); see also Recuenco III, 163 Wash.2d at 442, 180 P.3d 1276 (concluding *496 only that harmless error analysis does not apply when a defendant has not waived those rights, not concluding that harmless error is not appropriate when the defendant has waived a jury).
¶ 32 Here, in contrast to the defendants in both Hall and Recuenco III, Beito did waive his right to a jury. Rather than risk facing a jury trial with these facts, Beito stipulated that he strangled Ms. Seim to death and that he committed third degree rape of a child against her. Beito further agreed that the sentencing court could consider facts as described in the certificate of probable cause, multiple witness statements, and the autopsy report, as well as lists and photos of physical evidence. As agreed, the sentencing court relied on these stipulated and acknowledged facts in imposing the exceptional sentence. Hence, given that Beito waived his Apprendi/Blakely jury rights, Beito's exceptional sentence necessarily was based on stipulated facts not facts found by a jury. Hall is inapposite.
¶ 33 I would conclude that harmless error analysis does apply to cases in which a criminal defendant has waived his right to a jury trial by stipulating to the relevant facts or consenting to judicial fact-finding. The United States Supreme Court has held that "the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal." Recuenco II, 548 U.S. at 218, 126 S.Ct. 2546. Reversal is warranted only when such an error "necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (emphasis omitted) (failure to submit an element to the jury did not "`seriously affect [] the fairness, integrity, or public reputation of judicial proceedings'" when evidence supporting the element was "`overwhelming'" (internal quotation marks omitted) (quoting Johnson v. United States, 520 U.S. 461, 469-70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997))). That is, "`a constitutional error is harmless: [i]f it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Recuenco III, 163 Wash.2d at 448, 180 P.3d 1276 (Fairhurst, J., dissenting) (alteration in original) (internal quotation marks omitted) (quoting State v. Brown, 147 Wash.2d 330, 341, 58 P.3d 889 (2002)).
¶ 34 If the failure of the State to submit to a jury the aggravating factor at issue in this case was error,[2] it did not render Beito's trial fundamentally unfair or an unreliable vehicle for determining his guilt, nor did it contribute to the verdict obtained. Indeed, Beito readily admitted to his guilt in the plea agreement and stipulated to the evidence used by the sentencing court to sustain the exceptional sentence  that evidence being the fact that he raped Ms. Seim on the same night just before he killed her, documented physical evidence and facts as laid out in the certificate of probable cause, witness statements, and the autopsy report. This evidence is surely "overwhelming" evidence of his guilt and of the existence of the aggravating factor to meet the evidentiary standard described in Neder and Johnson. The exceptional sentence based on that evidence is thus not "the equivalent of a directed verdict of guilt on an offense ... greater than the one for which [he was] convicted...." Recuenco II, 548 U.S. at 221, 126 S.Ct. 2546. Beito had already stipulated to his culpability with respect to the greater "offense": that being that he committed third degree rape of a child against the victim under circumstances described by stipulated facts and in acknowledged evidence, as part of his plea agreement. The alleged error is thus harmless, and the exceptional sentence which Beito earned for his gruesome crimes should be upheld.
¶ 35 Adding support to this conclusion is an examination of the history of the application of harmless error analysis in Washington as laid out in Recuenco III by Justice Fairhurst in her dissent. 163 Wash.2d at *497 444-45, 180 P.3d 1276 (Fairhurst, J., dissenting) (tracing the application of harmless error analysis in Washington all the way back to the Territorial Code of 1881 and concluding that "the jury trial right does not prohibit applying harmless error analysis to ... the failure to submit a sentencing factor to the jury"). This historic assessment is complete, and it seems inconsistent to hold that the jury trial right can prohibit applying harmless error analysis to the failure to submit a sentencing factor to the jury when a defendant has waived that right to jury by stipulating as to his guilt, as is the case here, but not when a defendant has not waived that right, as was the case in Recuenco III. Even if Justice Fairhurst's appraisal is incorrect, though, independent consideration of the harmless error doctrine, as articulated by the United States Supreme Court and outlined above, necessarily lead me to an identical conclusion.

CONCLUSION
¶ 36 The alleged error here does not merit including this case in the small group of "rare cases" in which an error renders a judgment so fundamentally unfair as to require reversal. Recuenco II, 548 U.S. at 218, 126 S.Ct. 2546. The State's failure to submit the aggravating sentencing factor to a jury, where Beito chose to avoid the jury by his guilty plea, did not render sentencing inherently unreliable or fundamentally unfair. Any error is harmless and not grounds for reversing the exceptional sentence, which the trial court was justified imposing on the stipulated facts of this crime. For these reasons, I respectfully dissent.
WE CONCUR: MARY E. FAIRHURST, J.
NOTES
[1] Recodified as RCW 9.94A.530 (Laws of 2001, ch. 10, § 6).
[2] Recodified as RCW 9.94A.535 (Laws of 2001, ch. 10, § 6).
[3] The holding in Recuenco is not applicable to this case.
[4] Additionally, the State does not argue to the contrary.
[1] As part of the plea agreement, "Real and Material facts establishing the elements of a Rape First and Second Degree, and Rape of a Child Third Degree to be considered at sentencing are specifically stipulated to [by the defendant]." App. C to Plea Agreement, Clerk's Papers (CP) at 86. Beito also stipulated that "Rape of a Child Third Degree was committed." Id. at 87. Finally, Beito acknowledged the facts contained in "[s]tatements of the defendant included in the case discovery," id. at 86, which, in turn, included his own confession of the facts upon which the sentencing court relied in imposing the exceptional sentence. See Confession of Corey Beito, App. G to Suppl. Br. in Resp. to Arguments Raised in Pet'r's August 2008 Suppl. Br. compelling basis to support an exceptional sentence.
[2] To call the State's failure to submit a sentencing factor to a jury when the defendant has already stipulated to that factor an "error" stretches the concept. Such a broad definition "error" would render the failure to submit a defendant's guilt to a jury when the defendant has pleaded guilty. This absurd outcome would eviscerate the benefits of the plea-bargaining process. The Apprendi/Blakely rule does not extend to this absurd result. If any error occurred here, it was Beito's, that is, his choice to waive his rights to a jury by pleading guilty.